

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00651-CV

**IN THE INTEREST OF A.C.M.**, D.S.M., and N.J.H., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-00970
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 4, 2013

AFFIRMED

This is an appeal from a trial court's order terminating appellant A.M.'s parental rights to her children, A.C.M., D.S.M., and N.J.H.  In the order of termination, the trial court determined A.M. had violated sections (N), (O), and (R) of section 161.001(1) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (R) (West Supp. 2013).  The trial court further determined termination would be in the best interests of the children pursuant to section 161.001(2).  *Id.* § 161.001(2).  On appeal, A.M. does not challenge the grounds for termination as determined by the trial court, but contends the evidence is legally and factually insufficient to support the trial court's determination that termination was in the children's best interests.  After reviewing the evidence under the appropriate standards of review, we affirm the trial court's judgment.

### *Standard of Review*

As set forth in the Texas Family Code, a court may terminate a parent's parental rights only upon proof by clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). As defined by the Family Code, clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re J.O.A.*, 283 S.W.3d at 344; *In re E.A.G.*, 373 S.W.3d at 140. Courts must abide by this heightened standard because termination results in permanent and unalterable changes for both parent and child, implicating due process. *In re E.A.G.*, 373 S.W.3d at 140. Under the heightened standard, the reviewing court asks whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In reviewing legal sufficiency of the evidence in termination cases, we view the evidence in the light most favorable to the trial court's findings and judgment. *Id.* Disputed facts, if any, are resolved in favor of the lower court's findings, if a reasonable factfinder could have so resolved such facts. *Id.* We must disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* And, we are mandated to consider undisputed evidence even if it is contrary to the trial court's findings. *Id.* In other words, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We are not permitted to weigh credibility issues that depend on the appearance and demeanor of witnesses; credibility issues are generally within the province of the factfinder. *Id.*

at 573–74. Even when credibility issues appear in the appellate record, we defer to the trier of fact's determinations as long as they are not unreasonable. *Id.* at 573.

In a factual sufficiency review, the appellate court gives due deference to the factfinder's findings; the reviewing court must refrain from substituting its judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

### *Law on Best Interest*

We recognize the existence of a strong presumption that keeping parents and children together is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Despite this, we also presume that prompt and permanent placement of the child in a safe environment is in a child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). In *Holley v. Adams*, the supreme court set forth the now well-established factors courts consider when making a best interest determination:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not all inclusive, and it is not required that all factors be present before a court can terminate parental rights. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). A failure to provide evidence relative to some of the *Holley* factors does not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Additionally, although it is true that proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Texas Department of Family and Protective Services ("the Department") from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### *Application*

Appellant A.M. is the mother of the children. At the August 26, 2013 trial, she testified she had not visited N.J.H. since January 2012, and had not visited the other two children since sometime in May 2012. With regard to her lack of visitation, A.M. admitted "there's no reason" for her lack of visitation. She then stated she was upset and was unable to reach her case worker. A.M. admitted her failure to visit the children for such an extended period of time was harmful. She admitted she had failed to complete her individual therapy or drug treatment as required by the service plan, which she was ordered to complete. However, she stated she did not complete her individual therapy because her case worker never told her where to go, albeit she never asked. As for drug therapy, A.M. claimed she was currently in therapy at the San Antonio Substance Abuse Clinic, but could not provide any documentation to support her claim. A.M. agreed

visitation and the required therapy were important, especially the drug therapy given that N.J.H. was born addicted to a controlled substance.

A.M. testified she did not have a place of her own to live, but she was living with a cousin. She stated she had been living with her cousin for some time, but had not provided her case worker with the address, stating "No, I haven't talked to her at all." Although she stated she had looked for employment, A.M. admitted she was still unemployed and had been unemployed for the duration of the case. Given her failure to find work, A.M. had not paid the $350.00 in child support as required.

A.M. testified she wished to keep her parental rights and would "fight tooth and nail for my kids." She stated she could provide a safe home for the children.

After A.M. testified, Allison Shoot, the case worker for the Department testified. Shoot testified the children – ages 6, 4, and 1 – were all born drug addicted, suffering withdrawal symptoms after birth. Shoot also testified A.M. was still taking some form of opiates as of the last court hearing, and on May 13, 2013, A.M. refused a drug test and on June 25, 2013, was asked to submit to a drug test but was "unable to." According to Shoot, A.M. has not completed her service plan, specifically failing to complete individual therapy or drug treatment. Additionally, as A.M. admitted, there has been no visitation with any of the children for some time and a complete failure to pay child support. Admittedly, A.M. has had three different case workers, but since the inception of the case, A.M. had the same supervisor whose telephone number remained the same throughout the case.

Shoot testified all three children are in foster care. N.J.H., who is a one-year-old male, is in a foster home in which the foster parents wish to adopt him. He has been with these foster parents since he was released from the hospital after his birth. When asked if N.J.H. had bonded with his foster parents, Shoot replied, "Very much so."

Shoot advised that she attempted to contact the sister of N.J.H.'s father about placement, but she hung up on Shoot and had not returned follow-up calls. Shoot testified N.J.H. will require additional services as he ages. Specifically, he will need speech and physical therapy, and he has a skin condition that requires close monitoring. He is currently receiving the required therapies in his foster home, as well as treatment for his skin condition.

The other two children, girls ages six and five, are not in a home that desires to adopt them, but Shoot stated she has spoken with the foster parents and they have requested additional time to consider adoption. Shoot informed the trial court that if the current foster parents were unwilling to adopt, she would find them a foster home willing to adopt. Originally the girls were placed with their maternal grandmother, but had to be removed. They were not placed in the same foster home as N.J.H. because there was no room for them. However, N.J.H. visits with his sisters once a month or more.

Shoot testified both girls are in speech and physical therapy. Apparently the older girl was overweight, but has now lost fifteen pounds and is on a healthy diet and exercise regimen. She is now very active. Both girls have a routine, are involved in activities, and are thriving.

According to Shoot, all three children are adoptable, and a permanent home can be found for all three within a reasonable amount of time. Shoot concluded by stating termination of A.M.'s parental rights was in the best interests of all three children.

The Department also called the CASA volunteer, Lynn Mays, to testify. Mays testified she had been involved in the case since its inception. Mays stated she had "extensive contact" with A.M. throughout the case. She discussed the service plan with A.M. at length, noting she still had no proof of employment, no proof of stable housing, and no proof A.M. was active in drug treatment. A.M. would admit she needed to take care of these requirements, but did not. Mays

opined that A.M. did not appear to be taking their discussions about the service plan seriously. The last time Mays saw A.M. was on May 13, 2013, when she refused to take the drug test.

At trial, A.M. never challenged or disputed the claims, which the trial court ultimately found to be true, that she: (1) constructively abandoned the children, (2) failed to comply with the court-ordered service plan, and (3) was the cause of the children being born addicted to a controlled substance *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (R).

After considering the evidence, the *Holley* factors, the undisputed acts or omissions under section 161.001(1) of the Texas Family Code, and the applicable standards of review, we hold there is legally and factually sufficient evidence to support the trial court's determination that termination of A.M.'s parental rights was in best interests of all three children. We hold that under the clear and convincing standard, the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in the children's best interests. *See In re J.P.B.*, 180 S.W.3d at 573.

### *Conclusion*

Accordingly, based on the foregoing, we overrule A.M.'s issues and affirm the trial court's judgment.

Marialyn Barnard, Justice